327 P.2d 90

Kenneth Wayne SHERIDAN, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent.

No. 6558.

Supreme Court of Arizona.

June 25, 1958.

Neal T. Roberts, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent, John R. Franks, Robert K. Park, and James D. Lester, Phoenix, of counsel.

UDALL, Chief Justice.

Kenneth Wayne Sheridan has brought before us for review an award of the Industrial Commission of Arizona—hereinafter termed respondent or the Commission —denying his claim for compensation. Petitioner, at the time in question, was employed by E. R. Brunk, d. b. a. Brunks Furnishings, who carried workmen's compensation coverage with the State Industrial Fund. The employer makes no appearance.

By its first award the Commission found in effect there was insufficient evidence "carrying conviction" to establish the fact that petitioner suffered an injury by accident arising out of and in the course of his employment. A rehearing was granted where the facts were more fully developed, whereupon the Commission reaffirmed its previous award denying compensation. We issued certiorari to test the validity of this finding and award.

▉ While we have held that the identical finding used here, being couched in the words of the statute, if sustained by the record is legally sufficient to uphold a noncompensable award, see Bragg v. Industrial Commission, 71 Ariz. 37, 223 P.2d 180; still it is difficult to discover from respondent's brief specifically wherein the proof fails to establish a compensable claim. Basically we are not here dealing with what is normally termed "a conflict of evidence" case; if we were the award would necessarily have to be affirmed.

The petitioner's sole assignment of error is that the Commission erred in failing to award him compensation, for the reason that the only evidence before the Commission conclusively shows the petitioner suffered an injury by accident arising out of and in the course of his employment within the meaning of the Compensation Act.

▉ The law is so well established in this jurisdiction, as to require no citation

of authority, that the burden is on claimant to affirmatively show, by a reasonable preponderance of the evidence, that he is entitled to compensation. Furthermore the Commission is not required to disprove such a claim.

With the above rules as guide posts let us examine the component parts of the Commission's finding, viz.:

"4. That said applicant did not sustain an accident arising out of and in the course of his employment * * * and therefore any personal injuries claimed in the premises are not compensable * * *",

in order to see what is lacking in the proof submitted. Fortunately the record presented is short, only 21 written instruments, plus a 42-page reporter's transcript containing the testimony of petitioner, a fellow employee, and one of the co-owners of the business.

### Employment.

The record conclusively establishes that petitioner, aged 52 years, was hired by "Brunks" on January 5, 1957, as a "washing-machine repairman" at a weekly salary of $85, and that he was in their employ at the time of the injury here in question. The petitioner so testified at the hearing as well as by filing his workman's report of injury. This is confirmed both by the employer's first report of injury (record No. 1) as well as the subsequent testimony of Arlene Brunk, co-owner. Respondent makes no claim to the contrary.

### Accident and Injury.

Was there an accident arising out of and in the course of petitioner's employment resulting in an injury to petitioner? Petitioner was alone at the time of the accident. He testified it occurred as follows:

"Q. And Kenneth, how did the injury occur? A. I was moving an automatic washer (weighing 280 #) off the test there, I had just repaired it and I used the dolly they had out there, you have to hold one foot against the wheel to keep it from rolling back and then you have to reach in through the handle and grab hold of the inside, the top, so when you let it down again it won't cut your fingers, and practically your whole body is off the floor at that time and when my left foot came down it hit on something and rolled.

"Q. And then what happened? A. Well, by the time I got stopped I was almost under the washer and I felt kind of a tugging on my back, it did not hurt so much right at the time but the longer it went on the worse it hurt." (Insert supplied.)

He then stated he finished out the day, worked until noon the next day, Saturday the 9th; that he could hardly get out of bed so he did not work Monday or Tuesday, and then went to the hospital.

It is elementary that the Commission may disregard the self-serving testimony of an interested witness *except where corroborated by other credible evidence or disinterested testimony*. Muchmore v. Industrial Commission, 81 Ariz. 345, 306 P.2d 272.

L. D. Titsworth, a co-worker, testified:

"Q. Mr. Titsworth, when did you first hear about Mr. Sheridan's wrenched back? A. Well, I am not sure about the date but I believe it was on a Saturday.

"Q. On a Saturday. Go ahead. A. And that is the first I knew of it.

"Q. And what occasioned your hearing about it; how did you happen to hear about it? A. *Well, I saw him having kind of a hard time getting around and kind of holding his back and I asked what was wrong and he said he hurt his back and that is all I knew.*

"Q. Did Mr. Sheridan say to you how he had hurt his back, did you have any conversation with him about how it occurred? A. Not at that time.

"Q. Did you subsequently have any conversation with him about how it had occurred? A. After that I did and he told me just how it happened.

"Q. When was that, Sir, when did you have this second conversation?

A. Well, it was after he got back from the hospital, I imagine it was a couple of weeks later before I really knew what had happened.

\*    \*    \*    \*    \*    \*

"Q. Well, after you spoke with Mr. Sheridan on Saturday regarding what we talked about a minute ago, when was the next time you saw Mr. Sheridan? A. Well, I believe it was Monday morning I thought about him being lamed up, and I went over to see him Monday morning to see how he was, and I found him in bed, he couldn't hardly get out of bed, I don't know that he could get out of bed alone." (Emphasis supplied.)

Mr. Titsworth, having work to do elsewhere, returned to the shop long enough to report petitioner's condition to a workman who was the sole person present at that time. The next day the employer sent petitioner to the hospital for treatment by Dr. Hall, a doctor of employer's choosing.

Mrs. Brunk reported the accident on the regular form provided for that purpose. She wrote thereon in reply to the question asking for a description of how the injury occurred:

"I'm not sure. Employee did not come to work on Feb. 12 When inquiring about him He stated he had hurt his back on Feb. 11."

Later, in a letter to the Commission, she corrected the date of accident, stating: "the injury was really received on the 9th" rather than on the 11th as previously reported by her.

At the hearing Mrs. Brunk testified she had not talked to petitioner on the day she was apprised of his accident but did talk to him two weeks later when he returned from the hospital. She could not remember his exact conversation but thought it unlikely he had told her the accident occurred on Friday, the 8th. However, she testified she did not know for sure which date had been stated. Excerpts from her testimony follow.

"Q. Did he specifically tell you he was injured on Saturday, do you recall those words? A. I couldn't tell you that and be truthful about it, I am not sure about that.

"Q. In other words, it was your opinion from your conversations with him the injury was suffered on the 9th? A. Yes, because I knew nothing of his injury until we went over there on Tuesday, and Mr. Titsworth stated he told the upholsterer to tell us but the upholsterer failed to report it to us that Ken was even sick.

"Q. Is it possible, Mrs. Brunks, that he told you that the injury was suffered on Friday? A. No, I don't believe so.

"Q. But you don't recall him specifically saying he suffered an injury on Saturday either? A. Well, I wouldn't say so."

Mrs. Brunk also corroborated petitioner's testimony concerning the fact he usually did not do any heavy lifting. Such avoidance was apparently due to a gall bladder operation he had undergone the previous year.

The Commission urges it was the above discrepancies in the date, first brought to their attention by the employer's report of employee's injury as thereafter corrected by Mrs. Brunk's letter, that caused them to investigate, resulting in their finding and award. All of the evidence concerning the date relates to what petitioner told others, and there is sufficient corroboration in the Commission's file to support what he said.

The reports concerning the injury are even more conclusive than the evidence sustaining the occurrence of the accident. The claims and supplemental claims filed for compensation, the initial report of attending physician, the workman's report of injury plus letters written by petitioner, all report a "painful spastic back" or a "ruptured disc" (as it is later termed by Dr. Hall) resulting from the accident as set forth, supra.

Petitioner left the hospital, from his second stay there, without being discharged.

He stated this was due to the fact he could not take the traction and codeine he was receiving as treatment. He then went back to Banning, California and received further treatments from Dr. Rosenbaum.

Petitioner testified as follows concerning the injury:

"Q. * * * After that accident, what symptoms did you have, what were your injuries, what pain did you feel immediately after the accident? A. Well, the worst pain I had was in the back and running down my right leg and I could not put my weight on it. That was the worst pain, and then, of course, getting sick at my stomach, I didn't know what it was."

This was corroborated by the diagnosis of Dr. Rosenbaum as evidenced by the information in her letter that was introduced in evidence. Therein Dr. Rosenbaum stated that petitioner was suffering from a "severe sacro-illiac (sic) strain of some months duration" and "constant discomfort in the epigastric region of the abdomen". The doctor further asserted these resulted from the February accident as they had not been evident when she had treated petitioner in November 1956.

Reports of Dr. David Flores Guerra, of Nogales, Sonora, Mexico were introduced to show that petitioner was in comparatively good health when examined by him in November 1956.

Dr. Hall, the attending physician at the North Mountain Hospital where petitioner was taken, at the employer's direction, diagnosed the injury as a ruptured disc and so reported to the Commission in a workman's supplemental claim for compensation. His reports prior thereto had referred to it as a "painful spastic back".

The Commission apparently sees something dark and mysterious in the assertion of petitioner in his typewritten petition for rehearing when he states the accident occurred in lifting a "refrigerator" rather than a "washer" as previously reported. At the hearing held thereafter petitioner described the accident as occurring from "moving a washer". The Commission did not there attempt to have him reconcile the apparent contradiction on that point. Petitioner's description of it as being a "washer" was consistent with all of the other testimony and evidence.

This court has in prior opinions set forth the meaning of the phrase "arising out of and in the course of his employment."

" * * * it is sufficient to say that the phrase 'arising out of' refers to the origin or cause of the injury and the phrase 'in the course of' refers to the time, place, and circumstances of the accident." Martin v. Industrial Commission, 75 Ariz. 403, at page 409, 257 P.2d 596, 600; Serrano v. Industrial Commission, 75 Ariz. 326, 256 P.2d 709.

270

The principle is well established that where there are two inferences that may be drawn from the facts, the Commission is at liberty to choose either and its conclusion will not·be disturbed on review unless · wholly unreasonable. Muchmore v. Industrial Commission, supra. Further that the supreme court must set aside the Commission's findings where there is no evidence to support them. Hobson v. Twentieth Century Fox· Film Corp., 71 Ariz. 41, 223 P.2d 399; Stanley v. Moan, 71 Ariz. 359, 227 P.2d 389.

It appears to us that the Commission in refusing to award petitioner compensation for his injuries has arbitrarily chosen to disregard not only the testimony of petitioner but the corroborating witnesses and corroborating reports. We hold (1) the Commission in entering its award finding the claim to be noncompensable has acted· without any facts to sustain its position, and (2)·the only reasonable inference that can be drawn from this evidence is that petitioner suffered an injury· arising out of and in the course of his employment and the Commission's ‍finding to the contrary can only be based upon surmise and conjecture.

Award set aside.

WINDES, PHELPS, STRUCKMEYER and JOHNSON, JJ., concur.