382 P.2d 573

**Donald TATMAN, Petitioner,**

**v.**

**PROVINCIAL HOMES, Defendant Employer,**

**and**

**The Industrial Commission of the State of Arizona, Defendant Insurance Carrier.**

**No. 7756.**

Supreme Court of Arizona.

In Division.

May 29, 1963.

Bret Harte & Murphy, Tucson, for petitioner.

Lorin G. Shelley, Phoenix, for defendant insurance carrier, Industrial Commission.

Donald J. Morgan, C. E. Singer, Jr., Ben P. Marshall, and Robert D. Steckner, Phoenix, of counsel, for Industrial Commission.

BERNSTEIN, Chief Justice.

This is a certiorari proceeding to review an award of the Industrial Commission denying compensation. Petitioner was 50 years old at the time of the accident. He had been a carpenter for 20 years. On the day of the accident he was working on a scaffold about 15 feet off the ground from which he fell, sustaining injuries. He made a claim for benefits and on examination the doctors were of the opinion that petitioner had no orthopedic disability, but recommended psychiatric consultation. Petitioner was examined by a board of psychiatrists who found his condition to be that of passive-aggressive personality disorder with some paranoid overtones and further found:

"We recognize that he is, because of his own attitude toward himself, essentially totally disabled psychologically at the present time. However, we feel that this disability is almost entirely a matter of fundamental character difficulty and his own motivations. We would feel, at most, the amount of his total disability *due to the accident* of April 29, 1960, would be 10 per cent. We would advise that final disposition of the case be made on that basis." (Emphasis added)

Based on this report and a further confirming report from a psychiatrist the commission awarded the petitioner a 10% loss of earning capacity. Petitioner protested the award and on rehearing the commission found that the petitioner had suffered a 10% "physical functional" disability, but was physically able to work. He therefore could show no loss of earning capacity due to the injury and was not entitled to an award, thus taking from him the 10% they had previously awarded him.

The testimony on rehearing of one of the commission's psychiatrists was as follows:

"Q. I believe you stated, Dr. Beaton, that in your opinion Mr. Tatman with his present mental illness would not be able to obtain employment. What would be your reasons for reaching that conclusion?

"A. Mostly that his own attitude toward the problem of employment or toward himself, is one of almost total defeat, and total resignation to invalidism. There is also, of course, also the additional fact that as long as a man is receiving some kind of compensation for illness, he has very little conscious motivation to go out and gain employment."

\*　　\*　　\*　　\*　　\*　　\*

"Q. In your report of September 25, 1961, the report of the group board of consultation, you ascribed ten per cent of the total disability as being a result of the accident, I believe?

"A. Yes, sir.

"Q. But a ninety per cent then due to the fundamental character disorder?

"A. Yes.

"Q. But do you still believe that this hundred per cent disability would not have occurred had the accident not occurred?

"A. *I can only state that if this specific present situation would not be present, if the accident had not occurred.* But I still would have to add that from the physician standpoint, disability is what keeps a man from going back to work, and what keeps this man from going back to work is fundamental character disorder, not the symptoms that arose out of his injury." (Emphasis added)

There is no claim and no evidence that the petitioner is a malingerer and it is fair to say that the accident triggered the psychological mechanism which resulted in total disability.

██ The industrial commission first claims that as there is no residual *physical* disablement petitioner may not be compensated for loss of earning capacity due to psychological disablement. A disabling mental disorder is compensable if caused by a physical accident arising out of the employment, Murray v. Industrial Commission, 87 Ariz. 190, 201, 349 P.2d 627, 634.

"A workman covered by the Arizona Workmen's Compensation Law who is physically injured by accident arising out of and in the scope of his employment is entitled to accident benefits in the form of medical treatment and compensation for his disability until he is cured or until his condition is stationary and the permanent effects

of the accident are evaluated. *If such injury causes a disabling mental disease, he is entitled to the same benefits."* (Emphasis added)

See also McAllister v. Industrial Commission of Arizona, 83 Ariz. 213, 319 P.2d 129; Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279. There is no requirement that the disabling mental disease be accompanied by any physical disablement.

■ The Industrial Commission also takes the position that admitting 10% of the mental disorder was caused by the accident the present inability of petitioner to obtain employment is the result of the pre-existing mental condition which was not a result of the accident. Therefore petitioner has suffered no loss of earning capacity resulting from his injury.

This brings up again the difference between the medical cause of a condition and the legal cause. If legal cause exists damages may be assessed in tort or compensation demanded in the field of workmen's compensation.

We made this difference clear in Murray, supra, when we said:

"The difference in the medical and legal concept of cause results from the obvious differences in the basic problems and exigencies of the two professions in relation to causation. By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result. In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." 87 Ariz. at 199, 349 P.2d at 633.

And

"The injury need not be the sole cause of disability, if it is a producing cause." 87 Ariz. at 199, 349 P.2d at 633.

■ Again in Revles v. Industrial Commission, 88 Ariz. 67, 74, 352 P.2d 759, 763, we said:

"*Second,* an industrial injury need not be the *sole* cause of death, in order to entitle decedent's dependents to death benefits, as long as it appears that the injury contributed to and accelerated the inevitable."

We also said in Mead v. American Smelting & Refining Company, 90 Ariz. 32, 37, 363 P.2d 930, 933–934:

"Dr. Steen's concessions that the employment conditions constituted 'a very very minor factor' in precipitating or aggravating petitioner's emphysema, coupled with the other overwhelming medical evidence that the employment setting was definitely a causative factor in producing petitioner's condition, compels the conclusion that there existed the requisite *legal* causal relationship *between the illness and the conditions under which petitioner performed his work.*"

Perhaps an illustration will help drive this ghost of Banquo from the table. Let us take a fifty year old man who has been walking all his life on the brink of a precipice. He has walked close to the brink but he has kept his footing. Along comes some one who gives this man a push —not much of a push but just enough to make him lose his balance and plunge over the edge. It may not have been enough of a push to make a different person lose his balance. Medical cause would measure the force of the push and decide that the main reason for the plunge was that the man was too near the brink. For legal cause it is enough to show that but for the push the man could have kept on walking for even one more step. In the latter case the person who pushed the man must pay for all injuries resulting to him from his plunge.

We give this one more general example: There once was a camel which carried loads across the desert for his master. Although no one knew it this camel had a weaker back than other camels, but as his master had never loaded him too heavily he had been able to do his job well and was his master's favorite. At the beginning of one trip the camel was loaded as usual but while his master's back was turned a prankster wrongfully put a straw atop the load. The weight of this straw was just enough so that the camel's weak back collapsed. From the point of view of legal cause the prankster is liable to the camel's master for all damages the master suffers because of the camel's broken back.[1]

Where an injury occurring in the scope of employment has aggravated a pre-existing condition the workman is entitled to compensation for loss of earning capacity. Murray v. Industrial Commission, supra; Revles v. Industrial Commission, 88

---

1. In the field of torts the issues of liability are more complex. But the illustration applies with equal force to both torts and workmen's compensation law on the issue of the amount of compensation owing, due to the legal causation of an injury. Murray v. Industrial Commission, supra.

Ariz. 67, 352 P.2d 759; Mead v. American Smelting & Refining Company, 90 Ariz. 32, 363 P.2d 930. A percentage finding of medical disability will not be approved where the medical disability is a total loss of earning capacity, cf. Egbert v. Industrial Commission, 93 Ariz. 33, 378 P.2d 482 (1963).

The commission attempts to create a conflict in the medical testimony by quoting a psychiatrist to the effect that the petitioner was psychiatrically able to do the same physical work he had done before. It is sufficient to note that this psychiatrist was a member of the board which made the above quoted medical finding which was accepted by the commission. The psychiatrist did not see petitioner after the findings and stated he had no personal knowledge of whether petitioner's condition had changed since his report.[2] We find no conflict in the medical testimony.

■ The uncontradicted testimony shows the petitioner is unemployable. As we said in Sproul, supra:

"In determining the future earning capacity of a disabled man the object is to determine as near as possible whether in a competitive labor market the subject in his injured condition can probably sell his services and for how

much." 91 Ariz. at 136–137, 370 P.2d at 284.

The award is set aside.

STRUCKMEYER and LOCKWOOD, JJ., concur.

---

2. "Q. But he could still be totally psychiatrically disabled for all you know of

your own knowledge?
"A. For all I know he could be dead."