406 P.2d 746

**Clyde W. SMITH, Petitioner,**

v.

**MARTIN MARIETTA CORPORATION and the Industrial Commission of Arizona, Respondents.***

**No. I CA–IC 37.**

Court of Appeals of Arizona.

Oct. 21, 1965.

* A Petition was filed with the Arizona Supreme Court and assigned that Court's number 8475. The Arizona Supreme Court issued its Writ of Certiorari. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Rees, Estes & Browning, by William D. Browning, Tucson, for petitioner.

Robert A. Slonaker, Phoenix, for respondent The Industrial Commission of Arizona.

DONOFRIO, Judge.

This is an appeal by certiorari from the awards of The Industrial Commission of Arizona finding that the claimant, petitioner herein, suffered no physical disability or loss of earning capacity as a result of his injury.

Petitioner, Clyde W. Smith, was injured on June 26, 1962, while working in the office of the Martin Marietta Corporation as a procurement agent or buyer of component missile parts. He pulled out a desk drawer filled with a good deal of material (approximately 70 lbs.) and the drawer stuck. He yanked on it and it suddenly came out. He was wrenched forward in a forward flexed position and experienced a sudden severe pain in his back, and has not been able to work since.

Two awards were issued by the Commission. The first was issued on June 13, 1963, awarding claimant temporary disability, first total, and later partial as well, in a total amount of $4,938.72. It found claimant had no physical disability resulting from the accident. The second award was issued on July 7, 1964, and reiterated the monetary amount of compensation, the finding of no physical disability attributable to his injury of June 26, 1962, and added "that claimant possibly suffers from conversion reaction or neurosis" which did not prevent his engaging in the same type of work, and therefore he had suffered no loss of earning capacity. This appeal by certiorari is from these awards.

The sole issue is whether or not the claimant is suffering from conversion reaction, causally related to the accident, that prevents him from returning to his usual employment.

There is no dispute in the medical evidence. At the time of the accident he suffered an acute strain of the lumbar area. At a later examination orthopedic consultants found that claimant had no measurable disability of an organic nature in his back and referred him for psychiatric interview. He was seen by Dr. W. S. Williams in January 1963. It was Dr. Williams' impression that claimant was acutely disturbed, had genuine anxiety and that this emotional disturbance was the source of the persistence of his physical symptoms. The recommendation was that he be referred to the Psychiatric Board for evaluation.

In March 1963 he was examined by Doctors W. D. Eddy, W. S. Williams, and P. H. DiVries. At this examination the report shows under "Present complaints" the following:

"* * * He has a dull ache in his low back all of the time and a few days ago he bent down to put his shoes on and he states his wife had to help him up as he was unable to arise by himself. This has been an occasional

occurrance for many months, some times occurring two or three times a day, sometimes once or twice a week. He states the pain is real sharp and does not change. He denies any radiation of his pain. He feels a little numbness in his posterior right inner thigh. He states his feet freeze. In spite of warming his feet artifically they still felt cold. The patient has not returned to work and done very little work around the house. He says his yard work has been almost non-existent. He has done a little packing of his personal property. He denies any urinary disturbance. He is a little constipated, he believes because he has been taking pain pills. He has been taking Percodan, apparently, one or two a day, for the past several months. On occasion he has gone two or three days without taking any pills. He states he has to go back to them because of the severe pain."

The psychiatric evaluation was that claimant's primary illness was a psychiatric one and that the diagnosis was conversion reaction. It was further found that he did not demonstrate any residual physical damage which could be directly attributed to the accident, and that the accident operated as a precipitating stress for the conversion reaction.

At both of the hearings the psychiatrists who testified were in substantial agreement that claimant suffered a conversion reaction triggered or precipitated by the accident.

To be specific, we cite a portion of Dr. Neuman's testimony which seems to explain the situation:

"Q. Now, Doctor, when you refer to the backache, are you referring, in your opinion, are you talking about real pain?

A. Oh yes, this is real pain to this man.

Q. This man has a backache?

A. Yes, this man has a backache.

Q. But there is nothing organically wrong for the back to ache?

A. That is correct.

Q. What reason then do you attribute to his having a backache?

A. All of these many factors in this man's life history, from his early lifetime to what was his present work situation, and finally the incident in question.

Q. Do you think the incident in question, the business of pulling out the drawer and getting a lumbosacral strain, was a precipitating factor?

A. That is correct.

Q. And brought into focus, if that is the right word, or into recognizable form this mental condition that he now has?

A. The conversion hysteria."

and,

"A. A conversion reaction is a psychoneurotic reaction.

Q. It can be a disabling condition?

A. It can be.

Q. And it can be precipitated by trauma?

A. It could be the peg.

Q. The straw that broke the camel's back?

A. Yes."

and,

"Q. Then let me ask you one other thing. Would you consider this man in his present state a desirable and employable individual?

A. Certainly not in his present state.

The case hinges principally on claimant's testimony in the hearing of December 23, 1963, for it is this testimony upon which it appears that respondents base their claim that there is a conflict of evidence. Therefore, we set out pertinent parts of this evidence.

When asked if he felt his back was in condition to allow him to go back to work petitioner stated:

"A. I would be able to work as long as there isn't a lot of standing or an excessive amount of walking, as long as I could sit at a desk and be able to get up from the desk occasionally to relieve the position, then I could do it."

When asked if he believed he could do his same job again if he had it he stated:

"A. I sure would give it a go."

Counsel for both sides have very ably presented their respective contentions. Claimant urges that the uncontradicted medical-psychiatric testimony that he suffers from conversion hysteria triggered by the accident is sufficient to be the basis of an award of permanent total disability.

The Commission on the other hand argues that claimant's testimony that he is able to work at his former employment with some limitations was susceptible to the deduction that he could return to work.

This case is unusual in the respect that the Commission is relying on the testimony of the claimant himself to sustain its award, which testimony appears to be contradictory to the medical evidence. Were it not for the circumstances and the uncontradicted findings of the numerous doctors that petitioner was suffering from a serious mental disorder (conversion hysteria) we would have no difficulty in affirming the award. However, because of its nature the case warrants a full analysis of the credence to be placed upon claimant's utterances.

■ Of claimant's illness there is no question. The doctors testify he believes what he tells them. There is no question he experiences the pains and discomforts of his condition even though the doctors find no physical basis for these experiences. The doctors are certain he believes what he says is truth. His present adversities and financial difficulties are great. He has not worked since June 26, 1962. His prior work record was good and he is now told that he has no organic disorders. He needs a job desperately and the evidence shows that he has literally made scores upon scores of applications for work to no avail. Is it reasonable to believe that a person suffering his illness and beset with his problems would make the answers he did regarding his ability to work? Are these answers to be regarded as true facts? If the answer is yes to the first question and no to the latter then there is no conflict of evidence in this case. In face of the rule that this court will not supplant its opinion for that of the Commission is it our prerogative to interpret claimant's answers? In this case we think so.

Since the beginning of jurisprudence much has puzzled us in the realm of the human mind. On it much has been written by the courts, and running through all that has been written is the fact that little is understood of the inner workings of the mind. In the realm of criminal law the question, "What *is* insanity?" has been reiterated time again and no definition has yet been furnished that commands general credence and acceptance. Physicians called to testify as experts exhibit in their evidence anything but uniformity of opinion. Although we are governed by certain criteria the methods of applying the evidence to this criteria and the results are never the same. Often, a person laboring under a particular form of derangement is acquitted at one trial, while another having an exactly similar form of derangement is convicted at another trial. Possessing all the elements of a fair trial why is it that verdicts are so divergent? There can be no doubt that underlying all this is the fact that the mind is imperfectly understood.

■ Such uncertainty of the inner workings of the mind postulates some grave error in a proceeding involving a person with a mental disorder as claimant which does not make a searching investigation, to discover if possible the cause or causes of such person's utterances when they are

so contrary to his acts. We believe the better course is to view with caution any evidence made by such person and to make investigation to discover, if possible, the reason for the statements of such persons, when they are contrary to his actions and to medical evidence; and if there is any doubt to resolve the doubt in claimant's favor.

■ Without further belaboring this opinion and to answer the question, we believe that the statements made by claimant under the circumstances were not out of character and were reasonably to be expected. (Understandably he would like to get back to work and with severe limitations feels that he probably could). The facts of the case belie the truth of claimant's statements and emphasize that they are not worthy of credence. No finding can stand which is not based on reasonable and credible evidence. Sheridan v. Industrial Commission, 84 Ariz. 264, 327 P.2d 90 (1958); Belshe v. Industrial Commission, 98 Ariz. 297, 404 P.2d 91 (1965); Thiel v. Industrial Commission, 1 Ariz. App. 445, 404 P.2d 711 (1965).

■ The finding that claimant *possibly* suffered from conversion reaction or neurosis is not an appropriate finding. The equivocation has no basis as the medical evidence is uncontradicted. Regardless of all efforts or desires on claimant's part to work he is totally disabled because of the admitted mental condition. Until his condition is removed by either psychotherapy or time his ability to work will remain the same.

■ The petitioner was industrially injured and the injury was the proximate cause of the physical and mental symptoms which are totally disabling. A neurosis which produces physical disability is a compensable illness under our Workmen's Compensation Laws. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627

(1960); Sproul v. Industrial Commission, 91 Ariz. 128, 370 P.2d 279 (1962); Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573 (1963); Gullick v. Industrial Commission, 94 Ariz. 237, 383 P.2d 123 (1963); Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964); Sanches v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579 (1964).

The award is set aside.

STEVENS, C. J., and CAMERON, J., concur.