417 P.2d 738

**Elmer Glenn SELVIDGE, Petitioner,**
**v.**
**AMERICAN AIRLINES, INC. and the Fidelity and Casualty Company of New York, Respondents.***
**No. I CA–IC 104.**

Court of Appeals of Arizona.

Sept. 1, 1966.

Court issued its Writ of Certiorari. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

Gorey & Ely, by Stephen S. Gorey, Phoenix, for petitioner.

Fennemore, Craig, Allen & McClennen, by John J. O'Connor, III, Phoenix, for respondents.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of a decision of the Industrial Commission of Arizona denying the petition of Elmer Glenn Selvidge for reopening of his industrial claim.

We are called upon to determine whether petitioner's physical injury was the legal cause of petitioner's subsequent conversion hysteria.

Petitioner was working for the respondent American Airlines as a cargo handler when he suffered a compensable back injury in May of 1961. After a brief attempt to return to work, he was incapacitated from June, 1961, until November, 1961. The Industrial Commission's first decision awarded him temporary compensation for that period and allowed medical benefits through 31 March, 1962. The first award further found that petitioner suffered no permanent disability as a result of the accident. This award was not protested and became final.

Petitioner continued on light work with the employer and was sent to New York City to be examined by the respondent-employer's medical department. The examination report by Dr. A. M. Campbell, M.D., on 6 September, 1962, contained the following:

"This case to say the least is quite complex. The patient undoubtedly sustained a minor back injury in all probability a muscular strain for which he was adequately treated. However, the back injury was *the trigger point* around which a complicated conversion hysteria has been formulated. There is in all probability an underlying background which could not be brought out at this interview, but which has been developing for quite some time." (Emphasis supplied)

Dr. Campbell recommended that petitioner be given the benefit of neuro-psychiatric examination and care. Claimant had previously, in August of 1962, filed his petition and application for readjustment or reopening of claim alleging a need for further medical care as the result of his injury. The Commission denied reopening of the claim and after notice of protest of award and further petition and application for rehearing, the Commission issued a further order denying rehearing.

In April, 1963, petitioner's employment was terminated and a few days later he was admitted to a sanitarium suffering a psychotic reaction. He was discharged after 17 days, but was readmitted in June, 1963, and transferred to the Veterans Hospital in Wyoming. He was released in November, 1963. During this time, claimant, through his attorney, filed a petition and application for rehearing. Filed with the Commission by petitioner together with other reports was a letter from Dr. Otto L. Bendheim, M.D., in which he stated:

"Please be advised that my examination and observations of Elmer Glenn Selvidge revealed that there was indeed a causal relationship between the series of events surrounding Mr. Selvidge's job situation, including his industrial injury, and the disability for which I observed and treated him.

"In my opinion, Mr. Selvidge would not have been psychiatrically disabled if he had not been involved in the accident under discussion, receiving the injuries for

which he was treated, and being made very insecure in his earning capacity."

Hearing before a referee was held in Phoenix on 3 September, 1963, and 19 May, 1964. At the September hearing, Dr. Otto Bendheim, a specialist in neurology and psychiatry, testified that while the back injury was not the sole cause of petitioner's mental difficulties that it was one of the causes, and that the job insecurity subsequent to the injury was a heavy contributing cause. He described petitioner's condition as a conversion hysteria.

The hearing of 19 May, 1964, received the testimony of Dr. McGrath, also a specialist in psychiatry and neuropsychiatry. Dr. McGrath stated:

"That neither the circumstances of the accident nor the result of the accident would, *in a normal person,* cause nervousness." (Emphasis supplied)

Dr. McGrath was not too helpful concerning the relationship between the pain suffered as a result of the back injury and mental state of the petitioner. He stated:

"My difficulty with the question is that between the depression and the pain there was not a one directional relationship of cause-effect but a reciprocal relationship. If I might volunteer, the neurotic parts of the depression as much caused the pain as the pain caused the neurotic parts, or were related to, rather, the neurotic parts of the depression. It was rather not a cause-effect relationship relationship."

The Commission on 24 June, 1964, issued its findings and award. Finding Number 4 stated:

"That neither the schizophrenic personality nor mental state of depression acted upon the industrial injury so that there resulted physical disability or incapacity."

The Commission then denied a reopening, from which petitioner filed his application for writ of certiorari.

The basic question before the Industrial Commission in this case was whether or not there had been a change in petitioner's condition (related to the industrial injury) sufficient to call for a reopening of petitioner's claim. From the facts of this case, we are convinced that the claim should have been reopened.

We are concerned here with the difference between medical causation and legal causation. It is not necessary that the injury be *the* producing cause, but merely *a* proximate cause of the disability. Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960), and a neurosis or conversion hysteria which is proximately caused by industrial injury and produces physical disability is compensable. Smith v. Martin Marietta Corporation, 2 Ariz.App. 111, 406 P.2d 746 (1965). Our Supreme Court recently discussed this difference between medical and legal causation:

"Perhaps an illustration will help drive this ghost of Banquo from the table. Let us take a fifty year old man who has been walking all of his life on the brink of a precipice. He has walked close to the brink but he has kept his footing. Along comes someone who gives this man a push—not much of a push but just enough to make him lose his balance and plunge over the edge. It may not have been enough of a push to make a different person lose his balance. Medical cause would measure the force of the push and decide that the main reason for the plunge was that the man was too near the brink. For legal cause it is enough to show that but for the push the man could have kept on walking for even one more step. In the latter case, the person who pushed the man must pay for all injuries resulting to him from his plunge."

\*      \*      \*      \*      \*      \*

"Where an injury occurring in the scope of employment has aggravated a preexisting condition the workman is entitled to compensation for loss of earning capacity. (citations omitted)" Tatman v. Provincial Homes, 94 Ariz. 165, 169, 382 P.2d 573, 575 (1963).

And:

"By reason of his training, the doctor is thinking in terms of a single, precise cause for a particular condition. The law, however, endeavors to reach an inference of reasonable medical certainty, from a given event or sequence of events, and recognizes more than one cause for a particular injurious result. In the law of torts, it is said that the tortfeasor is not entitled to a perfect specimen upon which to inflict injury. Likewise, in the field of Workmen's Compensation, the employer takes his employee as he is. In legal contemplation, if an injury, operating on an existing bodily condition or predisposition, produces a further injurious result, that result is caused by the injury." Murray v. Industrial Commission, supra, 87 Ariz. 199, 349 P.2d 633.

And we have recently stated:

"Even though a claimant may have been predisposed to psychiatric problems, the fact that the accident made these psychiatric problems manifest is sufficient under the rule set forth by our Supreme Court in Tatman v. Provincial Homes (citations omitted) to establish that the accident is the legal cause of the resulting psychiatric disability." International Metal Products v. Industrial Commission, 2 Ariz.App. 399, 409 P.2d 319 (1965).

The record in the instant case clearly indicates that petitioner's psychiatric disability manifested itself shortly after the accidental injury. It was of concern to the various consultants who recommended that petitioner be given psychiatric treatment. Such treatment was the recommendation of the doctor for the respondent American Airlines. The Commission's award and findings are wholly based upon the testimony of Dr. McGrath that in his opinion the accidental injury was not the medical cause of petitioner's psychiatric disability. The Commission in relying upon Dr. McGrath's testimony and its findings of fact, completely ignored the question of legal causation as set forth in the cases of this Court and the Arizona Supreme Court. The evidentiary facts are uncontroverted that, in the instant case, the injury did operate upon the petitioner's bodily condition and predisposition so as to cause the psychiatric disability and therefore be the legal cause of petitioner's disability.

The award is set aside.

STEVENS, C. J., and DONOFRIO, J., concur.