452 P.2d 131

Laverne BEDWELL, Widow, Judy Bedwell, Minor Child, Petitioner,

In the Matter of Robert L. Bedwell, Deceased,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

G. T. R. Construction Company, Inc., Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA-IC 227.

Court of Appeals of Arizona.
March 24, 1969.

Rehearing Denied April 25, 1969.
Opinion Vacated May 29, 1969.
See 104 Ariz. 443, 454 P.2d 985.

Strickland, Altaffer, Davis & Eppstein, by Robert W. Eppstein, Tucson, for petitioner.

Robert D. Steckner, Acting Chief Counsel, by Donald L. Cross, Phoenix, and Spencer K. Johnston, Tucson, for respondent Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, Phoenix, for respondent carrier State Compensation Fund.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of the findings and award of the Industrial Commission of Arizona which denied death benefits to Laverne Bedwell, the surviving spouse and Judy Bedwell, the minor child of Robert L. Bedwell.

We are called upon to determine whether the evidence reasonably supports the findings and award of the Commission.

Deceased, Robert L. Bedwell, sustained a serious injury by reason of an industrial accident which occurred during the course and scope of his employment on 9 June 1966. The case was accepted for benefits and the petitioner was hospitalized. During the disability period, a condition of hypernephroma of the left kidney was discovered and exploratory surgery was performed which revealed a carcinoma of the left kidney with a liver metastasis. The left kidney was removed during this operation. Robert L. Bedwell succumbed to cancer on 25 April 1967.

The widow's claim was timely filed alleging that the industrial injury, a crushing injury to the pelvic area, either caused or accelerated the cancer and foreshortened the deceased's life.

The widow's claim for death benefits was denied, and a petition for rehearing was timely filed. A formal hearing was held in Tucson, Arizona, on 30 April 1968, at which time Dr. Darwin W. Neubauer was the only medical witness to testify. He had first treated the deceased in November 1965 for a hernia and had treated him at the time of the industrial injury. The doctor was asked whether the cancer existed at the time of the accident:

"THE WITNESS: What I mean to bring out was this. I would think the tumor was in existence at the time the man was injured. * * *

"THE REFEREE: I don't understand, Doctor. Did I understand you first to say you believed it was or was not in existence?

"THE WITNESS: I believe it was in existence. I mean, just accepting the normal history of cancers up there being in existence for a considerable period before they are clinically evident."

Although the medical testimony is not as clear as we would like it to be, the doctor did testify that the onset of the cancer might even have preceded the hernia operation which took place over 6 months before the industrial accident:

"Q Well, based on your knowledge of history and development of these tumors, do you have an opinion? I am not asking you whether you know whether it existed or not. Do you have an opinion that it is more likely than not that it existed prior to the November hernia repair?

"MR. JOHNSTON: November hernia repair—

"THE REFEREE: November, '65.

"MR. EPPSTEIN:

"Q November hernia repair.

"A It very likely could have been in existence. But all of the data we have on all of the data I am aware

of on cancer growth is extrapolating back on lung cancers, and cancer is many diseases, and so you are talking here on a hypernephroma. How can you extrapolate back, we have never been able to have set up experiments, at least to my knowledge, where you can extrapolate back on hypernephromas."

As to the effect of the accident on the cancer, Dr. Neubauer then testified on direct examination as follows:

"MR. EPPSTEIN:

"Q All right, now in this case, and assuming that hypernephroma of the left kidney existed prior to the accident of June 9th, 1966, do you have an opinion as to whether or not the trauma of that accident in some degree shortened the life of Robert Bedwell?

"A This is of course an extremely difficult one to answer. You know this. I mean, it has to be on assumption. This man incurred trauma. I do believe the trauma lowers our resistance. Probably there was some shortening of the man's life."

And:

"Q Doctor, when you say shorten a man's life are you talking about a matter of minutes, days, weeks or months?"

(objection which was overruled)

"THE WITNESS: Well, of course I am inclined to hedge on your question, because I would have to say a short period, and I don't know what period. I mean, I am talking in terms of probably days. At the longest, weeks."

Our statute in effect at that time read:

"B. Where death results from the injury, the parties entitled to compensation, or some one in their behalf, shall make application therefor to the commission, accompanied with proof of death and relationship showing the persons who are entitled to compensation, a certificate of the attending physician, if any, and other proof required by the rules of the commission." § 23–1061 A.R.S.

■ The law in Arizona is clear that to be the legal cause of death, an industrial injury need not be the *sole* or *only* cause as long as it is *a* cause of the death. As has been stated:

"Legal causation does not contemplate that the injury be the sole cause of the death. It is sufficient to satisfy the requirements of legal causation that the injury working upon an existing bodily condition or predisposition, produce a further injurious result." Baxter v. Industrial Commission, 6 Ariz.App. 156, 166, 430 P.2d 735, 745 (1967). See also Revles v. Industrial Commission of Arizona, 88 Ariz. 67, 352 P.2d 759 (1960).

And as was stated by our Supreme Court:

"Perhaps an illustration will help drive this ghost of Banquo from the table. Let us take a fifty year old man who has been walking all his life on the brink of a precipice. He has walked close to the brink but he has kept his footing. Along comes some one who gives this man a push—not much of a push but just enough to make him lose his balance and plunge over the edge. It may not have been enough of a push to make a different person lose his balance. Medical cause would measure the force of the push and decide that the main reason for the plunge was that the man was too near the brink. For legal cause it is enough to show that but for the push the man could have kept on walking for even one more step. In the latter case the person who pushed the man must pay for all injuries resulting to him from his plunge.

"We give this one more general example: There once was a camel which carried loads across the desert for his master. Although no one knew it this camel had a weaker back than other camels, but as his master had never loaded him too heavily he had been able to do his job

well and was his master's favorite. At the beginning of one trip the camel was loaded as usual but while his master's back was turned a prankster wrongfully put a straw atop the load. The weight of this straw was just enough so that the camel's weak back collapsed. From the point of view of legal cause the prankster is liable to the camel's master for all damages the master suffers because of the camel's broken back.

"Where an injury occurring in the scope of employment has aggravated a pre-existing condition the workman is entitled to compensation * * *." Tatman v. Provincial Homes, 94 Ariz. 165, 169, 382 P.2d 573 (1963).

A reading of the medical testimony of the only medical witness in this case leads us to the inescapable conclusion that while the decedent's cancer might well be considered the medical cause of death, the industrial injury having prevented the decedent from taking that "one more step" was the legal cause of the decedent's death.

■ Decedent's life having been shortened by the industrial injury, the industrial injury is the legal cause for the purpose of workmen's compensation.

Award set aside.

DONOFRIO, C. J., and STEVENS, J., concur.