461 P.2d 510

**Frank H. LYMAN, Petitioner,**

v.

**INDUSTRIAL COMMISSION of Arizona and Hagen Construction Company, Respondents,**

**State Compensation Fund, Respondent Insurance Carrier.**

**No. 1 CA–IC 274.**

Court of Appeals of Arizona, Division 1.

Department A.

Dec. 1, 1969.

Rehearing Denied Dec. 18, 1969.

Review Denied Jan. 27, 1970.

Finn, Meadow & Thrasher, by R. Y. Thrasher, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Industrial Commission of Arizona, Robert K. Park, Chief Counsel, by Ronald M. Meitz, Phoenix, for respondent State Compensation Fund.

CAMERON, Judge.

This is a writ of certiorari to review the lawfulness of an award of the Industrial Commission of Arizona which denied the petition and application of Frank H. Lyman for readjustment or reopening of claim.

We are called upon to determine whether or not the decision of the Commission is reasonably supported by the evidence.

The facts necessary for a determination of this matter are as follows. The petitioner suffered an industrial injury on 18 May 1966. He was at the time driving a 30-ton truck used in hauling dirt in connection with road building. The truck had been loaded, and petitioner had been signalled to back it out of the way when he discovered that his brakes had failed. He maneuvered between another large truck and a piece of equipment, backing it into a bluff which the truck hit with sufficient force to cause the petitioner to lose consciousness.

The petitioner did not seek medical attention immediately following the accident, but on 7 June 1966 was treated by Dr. A. A. Carrasco, D. C., who diagnosed petitioner's injury as "left side cervical and upper dorsal area trapezius, deep neck muscles very acutely strained". He took X rays which he read as showing "no apparent pathology". He treated petitioner with spinal manipulation and ultrasound. On 18 July 1966 this doctor recommended that the petitioner be evaluated by specialists to be recommended by the Industrial Commission. He was subsequently seen by Dr. Marion G. Peterson, M. D., an orthopedic specialist. Dr. Peterson reported that he could find no objective abnormalities and that his impression was that the patient's symptoms were on a conversion reaction basis. He determined that petitioner did not need orthopedic care, but might need some psychiatric care.

Subsequently, on 8 September 1966, he was seen by Dr. Lee S. Cohn, M. D., psychiatrist. Dr. Cohn gave as his impression the fact that the patient's diagnosis was that of a conversion reaction. However, he did not rule out the possibility that the petitioner was consciously maneuvering. Dr. Cohn suggested a brief period of hospitalization for a try of "narcotherapy". He felt that this treatment might remove the symptoms, even though it would not remove the underlying problem and permit the petitioner to return to work. Petitioner was hospitalized at Camelback Hospital from 3 October to 8 October 1966. Following his observation of the petitioner, Dr. Cohn reported to the

Commission in a letter which stated in part as follows:

"The accident of May 18th, 1966, apparently frightened him quite a bit more than he admitted or than was realized by others. I do not think he would be a very good risk to return to driving a truck. However I would think that he certainly should be able to do most any other kind of work.

"In summary then this is a fifty-one year old man who was involved in an accident on May 18th, 1966 and who since that time has been frightened and he has communicated that fear by conscious restriction of his left upper extremity. At the date of this writing he has full use of that extremity and for the most part is using it effectively. If there is any return of his restriction of motion it will be on a purely conscious basis. There is no further need for psychiatric treatment."

On 4 November 1966 there was filed a "Commission action" (see Benites v. Industrial Commission, 10 Ariz.App. 459, 459 P.2d 738 [1969] entitled "Findings And Award For Temporary Disability".

On 19 September 1967 the petitioner filed a petition to reopen. This petition was later supported by a letter from Dr. A. J. Bosse, M. D., dated 17 October 1967 in which the doctor stated that he had examined petitioner and that in his opinion the petitioner should be seen by a neurologist. The petitioner was seen by Dr. G. Scott Tyler, M. D., on 13 November 1967. Dr. Tyler gave as his impression that the petitioner was suffering either "conversion reaction or malingering, possibly superimposed on a suppression of the sixth cervical root on the left". Dr. Tyler recommended that petitioner be given the benefit of the doubt, and be referred for an EMG report. That testing was done by Dr. Freeman P. Fountain, M. D., who reported a "normal electromyogram in the muscles examined". Upon receipt of this report, Dr. Tyler reported back to the Commission that this relieved him of any doubt

regarding the presence of an organic lesion, and that it indicated that the diagnosis was purely a psychiatric one.

The petitioner was also seen by Dr. Paul Bybee, M. D., a Diplomat of the American Board of Psychiatry and Neurology, on 16 January 1968. Dr. Bybee submitted a very comprehensive report and reached the conclusion that petitioner's "inability" to use his left arm was on a conscious basis. He suggested work therapy in which the petitioner could be gainfully employed and not need use his symptom to avoid work, which he indicated would be a job for which driving heavy trucks was not required.

After other Commission action and petitions, a hearing was held on 18 July 1968 at which time Drs. Frazier, G. Scott Tyler, Paul Bybee, and Lee S. Cohn testified as did the petitioner and his wife and son. The medical testimony can probably be summed up by a portion of the testimony of Dr. Lee S. Cohn, a specialist in psychiatry. The testimony was as follows:

"Q At the time you dismissed him from the hospital, Doctor, was he able to use the left arm?

"A Yes.

"Q Did you have any conclusion about any return or restriction to that arm?

"A I thought if it did return it would be on a conscious basis.

"Q Doctor, you can state then to a reasonable medical certainty that the restriction complained of by Mr. Lyman to his left arm was a conscious one, is that correct?

"A Yes.

"Q Doctor, you make the statement in your analysis that Mr. Lyman would not be a very good risk to return to driving a truck.

"A Yes.

"Q Why were you of that opinion?

"A He had a bad accident, and I'm certain that the accident frightened him, and I think that on that basis

alone it would be in my judgment not wise to ask him to return to a situation, to a truck driving job that scared him the way it did following the accident. Also I felt that the problems that he had had continued for a long time after the accident, a number of months, to the time I saw him, anyway, and if he were confronted with the fact that he had deliberately restricted motion, I felt that there would be a possibility that he might then go ahead and have another accident to prove to the people that they were wrong and he was right. But basically my feeling was that he had been frightened by the accident, by the truck thing, and it would just make good sense to ask him to do something a little bit less dangerous, perhaps.

"Q As I understand your testimony, then, your reason includes the fact that he could deliberately and consciously go out and become involved in another accident if he were to go back to truck driving?

"A He might. It would be a risk that I would feel would be unjustified to take.

"Q Doctor, could you state after your examination and treatment of Mr. Lyman at the hospital that he did not have a psychiatric disability?

"A Yes."

Petitioner in his brief states the question presented for review as follows:

"May the respondent [Commission], through the doctors it has assigned to the petitioner, both refuse to release the petitioner to return to work of which he was capabe at the time of the accident and at the same time deny to the petitioner accident benefits and compensation?"

■ There is no doubt that by whatever term it is called an industrially related neurosis or conversion hysteria resulting in a physical disability is compensable. Selvidge v. American Airlines, Inc., 4 Ariz.App. 104, 417 P.2d 738 (1966), Smith v. Martin Marietta Corporation, 2 Ariz. App. 111, 406 P.2d 746 (1965), Tatman v. Provincial Homes, 94 Ariz. 165, 382 P.2d 573 (1963), Murray v. Industrial Commission, 87 Ariz. 190, 349 P.2d 627 (1960).

The question before the Commission and before this Court is whether the petitioner is suffering from a physical disability which is the result of a conversion hysteria or neurosis in which case he would be entitled to disability compensation or whether as the Industrial Commission contends he is suffering from no physical or mental disability and the outward manifestations of physical impairment are the result of a conscious desire for secondary gain by way of compensation. If the latter, he would not be entitled to compensation.

■ The Workmen's Compensation Act is designed to provide benefits in cases wherein there is an actual physical disability or in the case of conversion neurosis an unconsciously imagined disability. It does not compensate a situation wherein the petitioner is intentionally or consciously manifesting symptoms of physical disability. The Court of Appeals may not substitute its opinion for that of the Industrial Commission when the Commission has previously resolved the conflict in medical testimony. Brewer v. Industrial Commission, 9 Ariz.App. 319, 451 P.2d 897 (1969), Frizzell v. Industrial Commission, 6 Ariz.App. 293, 432 P.2d 152 (1967).

■ There being medical evidence in the record which reasonably supports the determination by the Commission, the award denying the petition to reopen is affirmed.

DONOFRIO, P. J., and STEVENS, J., concur.