NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JASON V., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.V., *Appellees*.

No. 1 CA-JV 16-0499
FILED 6-22-2017

Appeal from the Superior Court in Mohave County
No.  B8015JD201504022
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Ashlee N. Hoffmann
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Donn Kessler joined.

---

**J O N E S**, Judge:

¶1  Jason V. (Father) appeals the juvenile court's order terminating his parental rights to J.V. (Child), arguing the Department of Child Safety (DCS) failed to prove the statutory grounds for severance by clear and convincing evidence. For the following reasons, we affirm.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2  On April 6, 2015, one-week-old Child was hospitalized with an extremely high bilirubin count, indicating he was not being fed properly. Hospital staff observed that Father and his wife, Child's mother (Mother), a vulnerable adult, had to be prompted to feed Child, and learned Child did not have a place to sleep in their home. DCS immediately filed a petition alleging Child was dependent as to both parents on the grounds of neglect. Although Father denied the allegations of the petition, the court adjudicated Child dependent in July 2015 and adopted a case plan of family reunification.[2]

¶3  Further investigation revealed a significant domestic violence relationship between Father and Mother, and the two had to be separated during visits to prevent verbal and physical fights over who would perform which parenting tasks. Father explained he likes to be in control and "often resorts to violence as a way of controlling the situation before him." He and

---

[1] We view the facts in the light most favorable to upholding the juvenile court's orders. *Marianne N. v. DCS*, 240 Ariz. 470, 471 n.1, ¶ 1 (App. 2016) (citing *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010)).

[2] Child was also found dependent as to Mother, and her parental rights were terminated in November 2016. Mother's appeal was dismissed in February 2017 after her counsel avowed she could identify no non-frivolous issues for this Court's review. Thus, Mother is not a party to this appeal.

Mother also fought during transportation to and from visits and counseling sessions, prompting law enforcement intervention on at least one occasion to ensure Mother's safety. Father reported a long history of domestic violence, beginning at age twelve when he was arrested for hitting his own mother. He was arrested for assaulting Mother in June 2015 and eventually pleaded guilty to the offense.

¶4 Father participated in a psychological evaluation in July 2015 with Daniel Juliano, Ph.D., who indicated Father had a "significant" mood problem, features of obsessive compulsive disorder, bipolar disorder, anxiety disorder, and personality disorder with prominent borderline independent features. Dr. Juliano concluded these traits, coupled with Father's limited insight into the impact of his behavior on others, created a risk of harm to Child. He also noted the combination of medication and counseling had thus far "shown limited impact." Dr. Juliano recommended Father participate in psychiatric medication monitoring and intense experiential (rather than verbal) individual therapy that would avoid Father's tendency to give long and repetitive explanations for his behavior, parenting classes, an evaluation for vocational rehabilitation, and marriage counseling. Although Father was described as "highly motivated" to raise Child, Father's mental health "[was] at best a work in progress" and would improve only through "great discipline and adherence" to the recommended services. Ultimately, Dr. Juliano concluded Father's prognosis was poor because Father's "patterns of behavior with respect to his self-defeating behavior issues, his deflection [of] responsibility, his authority conflicts, [and] his interpersonal discord issues" are difficult to treat, particularly in the context of his relationship with Mother, a vulnerable adult whose limitations he did not grasp and whom he insists on controlling.

¶5 Father was referred to parenting classes, domestic violence education, individual counseling, couples counseling, mood management, psychiatric evaluation, and medication management. In December 2015, Father's attendance at individual counseling was described as sporadic; he did not engage in domestic violence education, couples counseling, a psychiatric evaluation, or medication management at all.

¶6 Although Father attended parenting classes, he did so inconsistently and used the time to obtain crisis services and complain about the dependency rather than to learn parenting skills. As a result, Father did not complete his assignments or learn those skills, and supervised visitation did not go well. Father had to be prompted to feed, change, interact with, and supervise Child and did not know how to soothe

Child, hold him appropriately, or keep him safe during visits. In addition to engaging Mother in disputes, Father argued with the parent aide, yelled and threw items during the visits, and threatened staff members. He also advised his counselor that he believed children were appropriately disciplined by "whooping them with a belt, paddle or a hand" to "put[] the fear of God" into them. Father reported he does not have a relationship with seven to ten other biological children because their mothers disagree with "his take on discipline."

¶7         In January 2016, Father advised DCS that the family's most recent home was "barely livable," and they were facing eviction. Shortly thereafter, the juvenile court changed the case plan to severance and adoption. DCS immediately moved to terminate Father's parental rights, alleging severance was warranted on the grounds of neglect, mental illness, and time in care.

¶8         Father's participation improved following the change in case plan, but he did not engage in the services or learn the necessary skills. Father began anger management classes in December 2015 but continued to have difficulty controlling his behavior. He was removed from a "managing moods" group because he was unable to behave appropriately and threatened other group members. The agency DCS used to provide transportation for Father refused to transport him because he continually threatened the drivers. Additionally, Father and Mother's domestic violence relationship continued; Mother presented to services with visible bruising on her arms, face, and neck, reporting Father had choked her, held her to the ground, hit her, and prevented her from calling for help. In June 2016, Father was arrested and again charged with multiple counts of aggravated assault against Mother. He also threatened to harm his counselor if his rights were terminated. Father reported his anger issues interfered with his ability to obtain employment, described himself as lazy, and appeared content relying on Mother's social security disability income to meet his needs except for an occasional "side job . . . help[ing] people to cleanup . . . their yard" and selling things at a swap meet.

¶9         Dr. Juliano completed a records review and re-evaluated Father in June 2016 to assess his progress with interventions, the stability of his relationship with Mother, and his amenability to intervention. Dr. Juliano noted Father had been provided all recommended services to address his turbulent relationship with Mother, anger management, and impulse control problems and had been given ample opportunity to participate; however, Father had "not [made] much progress." Despite almost a year of intervention, Father continued to exhibit the same

characteristics of a major mood-related disorder and minimized his responsibility for his role in the dependency, choosing instead to blame others for his circumstances and lack of progress. Dr. Juliano opined these circumstances resulted in a "considerable risk" to Child, and, because Father had shown he was not amenable to services, it was likely his condition, and the related risk to Child, would continue for a prolonged, indeterminate period.

¶10 A two-day contested termination hearing was held in July and September 2016. Dr. Juliano confirmed all recommendations for treatment were implemented over the course of the previous year, but Father remained "extremely impulsive, over reactive, and has very serious anger management pro[ble]ms" that result in "intermittent explosive episodes" and panic attacks that would put Child at risk. Indeed, the DCS caseworker testified she had received at least ten reports of violence and threats of violence involving Father from parent aides, landlords, mental health professionals, Mother, and DCS staff during the same period those services were in place. She agreed Father remained in a volatile relationship with Mother and did not exhibit any of the behavioral changes necessary to ensure Child remained safe in his care. Father admitted he "struggle[d] with anger" but, despite having failed to complete domestic violence, individual, or marriage counseling, nonetheless believed he was able to parent effectively.

¶11 After taking the matter under advisement, the juvenile court found DCS proved by clear and convincing evidence that termination of Father's parental rights was warranted because: (1) Father neglected Child, *see* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(2)[3]; (2) Father had substantially neglected or willfully refused to remedy the circumstances causing Child to be placed in out-of-home care for longer than nine months, *see* A.R.S. § 8-533(B)(8)(a); and (3) Father was unable to discharge parental responsibilities because of mental illness and there were reasonable grounds to believe the condition would continue for a prolonged indeterminate period, *see* A.R.S. § 8-533(B)(3). The court also found severance was in Child's best interests and entered an order terminating Father's parental rights. Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

---

[3] Absent material changes from the relevant date, we cite a statute's current version.

**DISCUSSION**

¶12 A parent's rights may be terminated if it is proven by clear and convincing evidence that "the parent is unable to discharge parental responsibilities because of mental illness, . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3); *see* Ariz. R.P. Juv. Ct. 66(C). To sever on this ground, there must also be evidence and a finding that reasonable efforts were made to reunify the family, or that such efforts would not restore the parent's ability to care for a child within a reasonable time. *See Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453, ¶ 12 (App. 2005) (citing *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 191-92, ¶¶ 31-34 (App. 1999)).

¶13 Father does not dispute that he suffers from a serious mood disorder complicated by other factors, the corresponding deleterious effect of this condition on his ability to parent Child, the reasonableness of DCS's reunification efforts, or that severance was in Child's best interests. He argues only that DCS failed to prove the mental health condition would continue for a prolonged indeterminate period because, he asserts, he was proactive in seeking medication and behavior modifications that have been successful in regulating his moods.

¶14 The record does not support Father's position. The juvenile court was not obligated to accept Father's self-serving belief that medication and anger management techniques had been effective at regulating his moods. *See Aranda v. Cardenas*, 215 Ariz. 210, 219, ¶ 34 (App. 2007) (noting self-serving testimony is not barred, but rather, becomes "a matter of credibility for the fact-finder to determine") (citing *Allstate Indem. Co. v. Ridgely*, 214 Ariz. 440, 444, ¶ 19 (App. 2007)); *cf. Sheridan v. Indus. Comm'n*, 84 Ariz. 264, 267 (1958) (authorizing the fact-finder in a workmen's compensation case to disregard the self-serving testimony of an interested witness if not corroborated by other credible evidence or disinterested testimony) (citation omitted). This is particularly true where both Dr. Juliano and the DCS caseworker testified Father had not stabilized and the evidence reflects Father experienced multiple, escalating violent episodes throughout the fifteen months Child was in out-of-home care. Father continued a domestic violence relationship with Mother, threatened nearly every person with whom he came in contact, and struggled to behave appropriately during supervised visitation, counseling activities, and transport to and from services. After considering the evidence, the court described Father as "aggressive," noting, "[a]t times he seems barely able

to maintain control," and described the parents' lifestyle as "chaotic, unstable, dysfunctional, violent, and simply unsafe for a small child."

¶15         We do not reweigh the evidence on appeal; as the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). Accordingly, we will affirm a termination order "unless there is no reasonable evidence to support" the court's factual findings. *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2 (App. 1998) (citing *Maricopa Cty. Juv. Action No. JS-4374*, 137 Ariz. 19, 21 (App. 1983), and *Maricopa Cty. Juv. Action No. JS-378*, 21 Ariz. App. 202, 204 (1974)). Here, reasonable evidence supports the court's determinations that Father suffered a substantial mental illness that affected his ability to parent Child appropriately, and there were reasonable grounds to believe the condition would continue for a prolonged, indeterminate period. Accordingly, we find no error.[4]

## CONCLUSION

¶16         The order terminating Father's parental rights to Child is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA

---

[4]      Because reasonable evidence supports the juvenile court's conclusion that severance was warranted based upon mental illness, we need not address Father's claims pertaining to other statutory grounds. *Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.") (citations omitted).