558 P.2d 737

Gerald CHEATHAM, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

S. E. Rykoff & Company, Respondent Employer,

Lumberman's Mutual Casualty Co., Respondent Carrier.

No. 1 CA–IC 1393.

Court of Appeals of Arizona, Division 1, Department C.

Nov. 4, 1976.

Rehearing Denied Dec. 10, 1976.

Petition for Review Denied Jan. 4, 1977.

Ely & Bettini by Joseph M. Bettini, Walter R. Ulman, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Jennings, Strouss & Salmon by Ronald H. Moore, Steven C. Lester, Phoenix, for respondent employer and respondent carrier.

OPINION

HAIRE, Chief Judge.

On May 1, 1974, Gerald Cheatham, the petitioner herein, sustained a lumbosacral strain while performing duties associated with his employment. A claim for workmen's compensation benefits was filed and accepted by the respondent carrier.

On September 3, 1974, the carrier issued a notice of claim status terminating compensation and active medical treatment because Cheatham was stationary and the back injury resulted in no permanent disability. The notice of claim status was protested and hearings held, which resulted in findings that petitioner's condition was stationary and that he had sustained no permanent physical or mental disability causally related to the accident of May 1, 1974. After review was denied by the hearing officer, the matter was brought to this Court on certiorari.

The questions presented on this review are whether under the evidence the hearing officer could have reasonably found that claimant's condition was stationary and that he had not sustained any permanent disability causally related to his industrial injury. If the disability question pertained to physical disability only, our task would be simple, since the evidence amply supports a finding of no permanent *physical* disability. Two highly qualified neurosurgeons, John R. Green, M.D. and John A. Eisenbeiss, M.D., examined claimant, did various diagnostic studies, and testified at the hearings. Although two myelograms showed a slight possibility of a defective disc at the L 5-S-1 level, both doctors found no objective evidence of any permanent injury related to the May 1, 1974 strain, and recommended no further medical treatment.[1] There is, however, a psychological aspect of this case which forms the basis of claimant's argument that the award must be set aside.

The hearing officer made extensive findings in this case which clearly reflect the problem:

"9. Dr. Green testified that it was his opinion that applicant's condition was medically stationary as early as August 23, 1974 at which time applicant could have been released to perform the regular duties of his occupation without permanent physical or mental disability causally related to his industrial injury, but that because applicant returned to his office after this date continuing to complain of pain and exhibiting signs of anxiety, he felt applicant should be given the benefit of any additional medical procedures which could possibly be done and he therefore referred applicant to Dr. Eisenbeiss and to Dr. Huger for examination and evaluation.

"10. Dr. Green further testified that it was his opinion that as of August 12, 1974 every effort should be made to return applicant to gainful employment as soon as possible and that because his examination revealed no objective findings whatsoever supportive of applicant's complaints and because he knew of no additional medical procedures which would alleviate applicant's subjective complaints, he referred applicant to other medical practitioners for examination and evaluation.

"11. Dr. Eisenbeiss testified that he examined the applicant on October 16, 1974 at which time he was unable to find anything objectively abnormal to explain applicant's complaints of pain, and that from an objective standpoint applicant had sustained no permanent physical or mental disability causally related to his industrial injury of May 1, 1974.

"12. Dr. Eisenbeiss testified that he diagnosed applicant's condition as being in the nature of disc disease 'suspicious of . . . without objective physical findings' and described the applicant as an individual who 'was difficult to evaluate' (by reason of his refusal to cooperate on the examining table) and one who con-

---

1. The claimant had an underlying degenerative disc disease, not related to the industrial injury.

sciously or unconsciously magnified the disease process.

"13. Dr. Huger testified that he first saw and examined the applicant on June 15, 1974 at which time he was of the opinion that applicant had a definite psychogenic overlay on an unconscious level, although he opined that 'you must draw a line' with applicant's care if ever he were to return to gainful employment.

"14. Considering Dr. Huger's testimony in its entirety, rather than considering selected portions thereof, his testimony established that applicant would continue to be psychiatrically disabled until such time as he had 'a hearing and be told this is it', particularly in view of applicant's resistance to and refusal to undergo psychological care and treatment.

"15. The testimony of Dr. Green, Dr. Eisenbeiss, and Dr. Huger is not significantly at variance or in conflict and when considered in its entirety in a light most favorable to the applicant, failed to establish that applicant's condition was not medically stationary on September 1, 1974 and that applicant is in need of continuing medical care subsequent thereto; moreover, the medical examiners who examined the applicant were in agreement and consistently suggested that 1) applicant should be returned to a regular work status and 2) applicant did not require additional or continuing medical care and treatment."

■ Insofar as concerns physical injuries, the principle is well established in workmen's compensation proceedings that an injured workman's condition becomes stationary when it has reached a relatively stable status so that nothing further in the way of medical treatment is indicated to improve that condition. This status may be reached even though the workman's physical condition may involve a continuing need for supportive medical benefits. *Home Insurance Company v. Industrial Commission,* 23 Ariz.App. 90, 530 P.2d 1123 (1975). In our opinion these same principles are equally applicable when the claimed disability is psychiatric in nature. Applying these prin-

ciples, and viewing the evidence in a light most favorable to upholding the findings of the hearing officer, *Micucci v. Industrial Commission,* 108 Ariz. 194, 494 P.2d 1324 (1972), we find adequate support for the hearing officer's finding that Cheatham's condition was stationary. Apart from Dr. Green's testimony relating to Cheatham's stationary condition insofar as concerns his physical injuries (summarized in the hearing officer's finding no. 9, quoted above), the testimony of the psychiatrist, Dr. Huger, indicates that Cheatham's psychiatric disability was relatively stable in the sense that it was now probably chronic with no testimony to indicate that it would progressively worsen. Dr. Huger further testified that additional psychiatric treatment would be unavailing to improve Cheatham's condition. His prognosis was "poor for any kind of psychological help". He also testified:

". . . but again, he [Cheatham] was not receptive so there is nothing you can do."

The record is candidly summarized by Cheatham's counsel in his opening brief when he states that:

"Because of Cheatham's psychiatric makeup he is not amenable to treatment."

It is not this Court's prerogative to second-guess the expert witnesses and substitute our opinion for theirs. There is no evidence that, if given another opportunity, Cheatham would suddenly become amenable to psychiatric treatment which would improve his condition. The hearing officer must render his decision based upon the evidence submitted to him, and we find ample support in that evidence for his finding that Cheatham's condition was stationary.

■ We next consider whether the evidence required that the hearing officer find that Cheatham had a permanent disability because of his psychiatric condition. The hearing officer's finding no. 14 (quoted above) would indicate that he interpreted Dr. Huger's testimony as indicating the existence of a psychiatric disability. However

there is something of a conflict, when, as is indicated in findings nos. 13 and 14, Dr. Huger further testified that this psychiatric disability would end at such time as Cheatham had a hearing and was told that his compensation was at an end. Upon an analysis of this seemingly conflicting testimony, it appears that what the doctor is saying is that Cheatham does have a psychiatric disability in the medical sense of the term, but that in his opinion such disability will not prevent Cheatham from working, given the proper stimuli. From this we believe that the hearing officer could logically conclude that Cheatham's psychiatric condition did not constitute a disability within the meaning of the Arizona statutes regulating the award of permanent disability benefits.

In *Chavarria v. Industrial Commission,* 99 Ariz. 315, 409 P.2d 26 (1965), on a record from which the Commission could have concluded that the claimant's mental disability had some element of conscious motivation for secondary gain, the Arizona Supreme Court held:

> "[The Commission] could conclude that the best treatment was to take petitioner off compensation, thereby giving him the incentive to return to regular employment." 99 Ariz. at 322, 409 P.2d at 30.

We do not interpret *Chavarria* to mean that in every mental disability case the Commission can act as a doctor and on its own prescribe work therapy as the appropriate treatment for industrially caused mental disability. *See Johnson v. Industrial Commission,* 17 Ariz.App. 424, 498 P.2d 498 (1972) (rev. den.) Rather, any such result must find adequate support in the record. In *Chavarria,* support was provided by the evidence of some element of conscious motivation for secondary gain.[2] Here support is

found in the expert medical testimony which indicates that Cheatham is able to return to work and that work is necessary to effectuate a cure of his mental condition. To the extent that *Johnson v. Industrial Commission, supra,* might appear to indicate that such an award would be improper even though the record contains such expert medical testimony, we decline to follow it.

Having found adequate support in the record for the hearing officer's finding that Cheatham's condition was stationary, and that his mental condition did not constitute a permanent disability, the award is affirmed.

EUBANK, J., concurs.

NELSON, Judge, dissenting.

I must dissent from the holding of the majority opinion. Viewing the evidence in a light most favorable to upholding the findings of the hearing officer, as we must, *Micucci v. Industrial Commission, supra,* his findings numbered 9 through 14, above, are absolutely correct. Indeed, his observation in finding number 15, supra, that the testimony of the three doctors is not significantly at variance, is also beyond challenge. When he goes on, however, and states that the non-conflicting medical testimony fails to establish the need for further treatment of Cheatham's mental problem, he draws a conclusion which is not supported by the record.

The essence of Dr. Huger's testimony is that Cheatham was in need of additional psychiatric evaluation and treatment and that he could be helped if he would accept the treatment. Since the main psychiatric problem in cases such as this is the patient's refusal to accept the fact that he has any

---

2. The hearing officer made no finding as to whether Cheatham's mental condition was on a conscious or unconscious level. His finding no. 13 correctly *recites* Dr. Huger's testimony that his initial opinion was that Cheatham's mental condition was on an "unconscious level" at the time he examined him in June of 1974. However, we note from the transcript that Dr. Huger later refused to speculate as to Cheatham's

motivational basis at the time of the hearing in September 1974, and in fact ended up retreating from his prior definite opinion, stating:

> "Q. And as of that time [June 1974] you did not consider him to be a malingerer?
> "A. Well, at that time, as I told you, that this type of patient is difficult, you know, *you can take your guess at it. I don't know the answer to that.*" (Emphasis added).

problem other than an organic, physical disability, it is understandable why the prognosis for improvement was poor. It is also clear from the testimony of Dr. Huger that not only was Cheatham's mental condition not stationary, it would become progressively worse if he did not accept psychiatric treatment soon.

In fact, what the hearing officer has apparently done is try to provide the "treatment" suggested by the psychiatrist as the best, and perhaps only, therapy available under the circumstances of the case at that time: give him a hearing, fairly and impartially conducted, tell him there is nothing physically keeping him from working, tell him to go back to work, and cut off his compensation. While it would be entirely proper to cut off Cheatham's benefits if he persisted in refusing or resisting psychiatric therapy and treatment after being advised that such care and treatment were reasonably necessary to promote his recovery, A.R.S. § 23–1026E (see also *Keeton v. Industrial Commission,* Ariz.App., 554 P.2d 898 (1976)), such "therapy" cannot be administered by holding that he is stationary without permanent disability when the uncontroverted medical testimony is that he desperately needs additional psychiatric care.

As Chief Justice Cameron said, when a judge of this Court:

"There is no doubt that by whatever term it is called an industrially related neurosis or conversion hysteria resulting in a physical disability is compensable. [Citations omitted]

\*   \*   \*   \*   \*   \*

"The Workmen's Compensation Act is designed to provide benefits in cases wherein there is an actual physical disability or in the case of conversion neurosis an *unconsciously* imagined disability. It does not compensate a situation wherein the petitioner is intentionally or *consciously* manifesting symptoms of physical disability." *Lyman v. Industrial Commission,* 11 Ariz.App. 31, 34, 461 P.2d 510, 513 (1969). (Emphasis supplied)

In *Lyman v. Industrial Commission,* supra, the court found there to be conflicting evidence as to conscious or unconscious nature of Lyman's illness, and therefore affirmed the Industrial Commission's award denying compensation. Here there is not only no substantial conflict in the testimony, but a finding by the hearing officer of no conflict in the testimony relative to the unconscious level of Cheatham's neurosis.

The award should be set aside.